Gaston, Judge.
It is a plain principle of equity that those who have engaged in a common hazard should share in the loss consequent upon it; and on this principle is founded the obligation of contribution between co-sureties. The question in this case is whether, upon the facts agreed, the law infers that the plaintiff and defendant did take upon themselves a common risk. So far as the determination of this question *398 depends upon the nature oí the engagements made by the Pontiff and defendant with the creditor of Tunstall, the en-quiry is free from difficulty. The plaintiff, by executing the bond as a co-obligor with Tunstall, bound himself absolutely for the payment of the debt; whereas, the defendant, by indorsing the bond, engaged to pay only upon the default of Tunstall and the plaintiff. While the plaintiff, therefore, became the surety of Tunstall, the defendant became the surety of Tunstall and the plaintiff. The form of the transaction with the creditor is, however, but prima facie evidence of the relation between the debtors, and does not conclusively establish the order of their liabilities as arranged among themselves; and it is insisted for the plaintiff that the fact that the plaintiff executed and the -defendant indorsed the bond for the accommodation of Tunstall, and without benefit to either, makes Tunstall sole principal both to plaintiff and defendant, and therefore constitutes them joint and equal sureties for him. To this argument we do not assent. The fact relied on certainly shews, that as between Tunstall and the plaintiff, the former was principal and the latter surety, and confirms what is to be inferred from the nature of the instrument, that Tunstall was also a principal in relation to the defendant; but we cannot see how it establishes that Tun-stall was not also a principal with respect to the defendant, as the instrument indicates. The fact is as consistent with the allegation of the defendant, that he was asupplemental surety in addition to the plaintiff, the primary surety, as with the allegation of the plaintiff that the defendant and himself were co-sureties; and therefore it in no way repels the inference to be drawn from the nature of their respective liabilities to the creditor. But the case of Daniel v. McRea, 2 Hawks, 590, has been pressed upon us as an authority establishing the position, that where two persons, for the accommodation of a third, make themselves responsible for his debt, the law, without regard to the nature of their engagements, pronounces them to be joint sureties. We have before had occasion to declare our purpose to adhere to the adjudication in that case, (Richards v. Simms, 1 Dev. Bat. 48,) but, in our opinion, it is far from sanctioning the position for which it is cited. In Daniel v. McRea, it was decided that where there are *399 successive indorsers of an accommodation note, they are to be regarded, until the contrary is shewn, as co-sureties for , , . . i the maker; but it professes so to decide upon principles map-, plicable to the case of the maker and indorser of such a note. In delivering his opinion in Daniel v. McRea, Judge Hendeiison, one of the Court that concurred in the decision, begins with laying down the doctrine that cosureties are those who have assumed the same obligation and are equal in all their liabilities, while supplemental sureties are those who' come in aid of the former; and then undertakes to shew that/ the successive indorsers have assumed the same obligation, because the last indorsement “ imposes no obligation on the. holder to apply to the prior indorser, before he calls upon the subsequent indorser,” while he distinguishes the obligations of a maker and an indorser, inasmuch as the holder “ must make proof of his endeavours to procure payment from the maker, before he can resort to any indorser.” In the subsequent case of Smith v. Smith, 1 Dev. Eq. Rep. 173, where the plaintiff’s intestate had executed the note with the principal debtor for his accommodation, and the defendant had' indorsed it at the request of the principal, and with a knowledge that it was to be discounted for his benefit, the same Judge delivering the opinion of the whole Court, recognizes it as the rule both of law and equity, “ to regard the order of liability arising upon' the face of the transaction as fixing' prima facie the relations of principal and surety, and of co-sureties and supplemental surety;” and in noticing the argument that the circumstance of its being known to the indor-ser, that one of the joint makers was not a principal, but a surety only in the note, created an agreement of mutual liability between the indorser and such joint maker, “ declares not only that such a doctrine had never been established, but that it would be to place a man in a grade and order of. liability not in accordance with his act,” and which could not be done without his assent. In the case of Gomez v. Lazarus, 1 Dev. Eq. Rep. 205, we find a recognition sufficiently explicit of the same principles. Gomez had accepted and Clark had indorsed for the accommodation of Levy, a bill drawn by the latter. “ There is no agreement,” says Judge *400 Henderson, “ made between Clark and Gomez to change l^e on^r °^ their liability appearing upon the face of the transaction. Upon it, Gomez stands prior in obligation to Clark, for Clark’s liability was to arise upon his default. Standing in this relation, Gomez cannot call on Clark to contribute as a co-surety.” And finally, in the case of Hatcher v. McMorine, 3 Dev. 228, where the same learned Judge professes his willingness to review the case of Daniel v. McRea, because the decision therein had not given general satisfaction, and was contradicted by an adjudication in the Supreme Court of the United States, he sets forth the extent of that decision, viz: “ that in bills or notes, for the accommodation of the drawer or maker, prior and posterior indorsers stand in equal degree as co-sureties, without any express contract to that effect, if, at the time of their respective indorse-ments, they knew that it was accommodation paper, for the benefit of the drawer or maker, and that nothing was paid for or upon the indorsement.” The case of Daniel v. McRea cannot, therefore, be regarded as authority for the position here urged by the plaintiff, without a perversion of the declared meaning of those by whom it was decided. It lays down a rule from which, whether originally right or wrong, we cannot depart, without violence to the understanding and practice of the community, which have conformed to it — but it is a rule confined to prior and subsequent endorsers upon accommodation paper. It does not establish, nor was it intended, nor has it been understood, to establish, the like rule as between the maker and indorser — or the acceptor and in-dorser — -or others liable in different characters, upon such paper. And to introduce it among these, would be to violate principles, to produce confusion, and to contradict the general usages of the commercial world.
In’ this case, the original bond on which the loan was obtained from the bank, and the bond subsequently given in renewal, were both executed and endorsed in the same manner. Had it been otherwise, this circumstance, perhaps, might have been evidence to a jury, that the form last adopted was accidental only, and that in fact there had been an agreement of common and mutual liability between those *401 who gave the benefit of their names to the principal debtor.
It is the opinion of this Court, that there is error in the judgment rendered for the plaintiff in the Superior Court — . that for this error the said judgment should be reversed — and that upon the case agreed, there must be judgment for the defendant.
Per Curiam. ' Judgment reversed.